FRANK M. CANNON *v.* THE STATE.

1. INDICTMENT. *Finding and presentment. Entry.*
   The fact that a general minute entry and indorsements on an indict-
   ment correspond in number, date of filing, and the name of the
   foreman of the grand jury, is sufficient to identify the indictment.

2. WITNESS. *Impeaching credibility. Former contradictory statement.*
   While a conflicting statement on a former trial may be proved to dis-
   credit a witness, counsel's comment on the improbability of the first
   statement is inadmissible in evidence to show motive for the change
   in testimony.

3. SAME. *Animus. Motive for varying evidence.*
   Nor can the fact be proved that a medical expert was not examined on
   the former trial to show the impossibility of what the witness then
   stated, although he was examined at the present trial, when the
   witness made a different statement.

4. SAME. *Bias. Contradiction of answer.*
   But when the witness, in attempting to explain how he came to make
   variant statements, denies a fact bearing on the admitted variance,
   *semble* that the fact denied may be proved.

5. HOMICIDE. *Express malice. New provocation.*
   If a man, on a casual meeting, is assaulted by another, towards whom
   he bears malice, and kills him with a deadly weapon, the jury must
   determine whether the act was induced by the assault or by malice.

6. JURY. *Prejudice. New trial.*
   A conviction will be set aside, if a juror, who has, unknown to the
   accused, prejudged the case against him, states, on his *voir dire*,
   that he is unbiassed.

ERROR to the Circuit Court of Claiborne County.

Hon. J. B. CHRISMAN, Judge, did not sit in this case, but
Hon. RALPH NORTH presided by interchange.

The record, after the entry of the organization of a grand
jury with S. S. Neely as foreman, at the May term of the
court, 1877, recited that, on June 7, 1877, the grand jury came
into open court in lawful manner, and " upon their oaths and
through their foreman, S. S. Neely, presented to the court the
following true bills of indictment, numbered respectively, 26,
27, 28, and 29, in red ink, upon the upper right-hand corner of
each of said indictments, each of which is indorsed a true bill

and signed by the foreman." Upon the back of the indictment on which the defendant was tried was written the following : " No. 28," in red ink, on the upper right-hand corner ; below that, " May Term, 1877, Claiborne Circuit Court," and also :

| " The State | | A true bill. |
| *v.* | Murder. | S. S. Neely, |
| Frank M. Cannon. | | Foreman Grand Jury." |

The indictment was marked by the clerk, " Filed and bench warrant issued, June 7, 1877." When convicted thereunder of the murder of Charles H. Martin, the defendant moved, in arrest of judgment, that the record failed to show the finding and presentment in court of the indictment by the grand jury.

The tenth instruction, for the State, was that, " When malice is shown, and the person against whom such malice existed be afterwards killed with a deadly weapon by the person harboring the malicious purpose, no mere provocation at the time of committing the act will relieve it of the character of a malicious killing, but it is presumed to be in consequence of the previous malice."

Charles H. Martin, who, with his mistress, Caroline Austin, occupied part of the house where Cannon lived with his family, and cultivated part of the same farm, assuming that Cannon was afraid of him, had repeatedly insulted him, imposed on him in various ways, and stated, in presence of his family, his intention to kill him. Cannon expressed resentment at this treatment. The day before the homicide, Martin locked up Cannon's horses, and when the latter released them said that he would force him to fight. Next morning he left the house with his gun. Cannon remained in his room. When Martin was returning, and according to the defendant's evidence, was aiming his gun at Cannon, the latter shot him through the window, one ball striking his left elbow-joint, on the inside.

Caroline Austin, who testified that the act was an assassination in pursuance of previous threats, was alleged to have asserted, before the committing court, that Martin, when shot, was holding his gun back of his neck, with both hands, unconscious of Cannon's proximity. She did not, however, so state on this trial, when examined after a medical expert had

pronounced the wound impossible, if the gun was held in that posture. Her testimony as to certain facts touching her locality at the time of the homicide was also declared to be different at the present trial from what it was before the magistrate. After she had denied on cross-examination that she made the contradictory statements, the accused proved her former testimony, and excepted to the court's refusal to admit evidence of the facts that the expert was not examined in the committing court, and that his counsel there argued that Caroline Austin's position could not have been as she then testified.

A juror, who was Caroline Austin's paramour after Martin's death, stated, on his *voir dire*, that he had neither formed nor expressed an opinion on the case. But, after the verdict, the prisoner learned by accident that he had said, in conversing about Caroline, that it was a heavy case, and he did not think Cannon would get clear. The motion, on this ground, for a new trial, like the motion in arrest of judgment, was overruled, and the prisoner brought up the case.

*E. S. Drake*, for the plaintiff in error, argued orally and filed a brief.

1. The object in offering to prove counsel's comments before the justice of the peace and that the medical expert was not examined at that trial, was to show that the difference in Caroline Austin's statements was not due to lapse of memory, but to designed adaptation of her testimony to the other evidence in the case. It is competent for the defence to offer any testimony tending to impeach the credibility of a witness for the prosecution.

2. A new trial should have been granted, because the juror who on his *voir dire* denied all bias was shown after verdict to have fully made up his mind to convict. *Cody* v. *State*, 3 How. 27. The accused was not tried by an impartial jury.

3. It was error to overrule the motion in arrest of judgment. *Friar* v. *State*, 3 How. 422; *Goodwyn* v. *State*, 4 S. & M. 520; *Laura* v. *State*, 26 Miss. 174; *Cachute* v. *State*, 50 Miss. 165; *Cornwell* v. *State*, 53 Miss. 385. The finding of the indictment on which the defendant was tried is not recited in the record. This is not one of the indictments mentioned in the entry as numbered on the upper right-hand corner.

*J. D. Vertner*, on the same side, argued the case orally and in writing.

1. No indictment against the plaintiff in error is shown by the minutes of the court to have been found. Return of the indictment must appear affirmatively of record. *Laura* v. *State*, 26 Miss. 174 ; *Dyson* v. *State*, 26 Miss. 362 ; *Jenkins* v. *State*, 30 Miss. 408 ; *Pond* v. *State*, 47 Miss. 39 ; *Cachute* v. *State*, 50 Miss. 165 ; *Cornwell* v. *State*, 53 Miss. 385. The record may aid the indictment, but not *e converso*. *Cody* v. *State*, 3 How. 27 ; *Abram* v. *State*, 25 Miss. 589. The red-ink mark on the indictment under which .he was convicted cannot be identified as one of the marks mentioned in the recital. The entry must contain a distinct statement, *Laura* v. *State*, 26 Miss. 174, in the form given in *Green* v. *State*, 28 Miss. 687, 693, showing the style of the case and a description of the parties.

2. The juror was prejudiced against the accused, and answered falsely on his *voir dire*. A new trial must result. *Cody* v. *State*, 3 How. 27. Impartiality is essential, and without it there can be no constitutional jury. *Sam* v. *State*, 13 S. & M. 189. The bias of the juror was unknown to the defendant at the trial.

3. The accused should have been allowed to show Caroline Austin's motive for changing her testimony. It went to prove that she was testifying to convict, for the change was made to fit the case as varied in the Circuit Court. Her *animus* was a proper matter for the consideration of the jury.

*W. P. Harris*, on the same side.

1. The plaintiff in error was not tried by an impartial jury, and was erroneously refused leave to show the bad motive of the State's chief witness in changing her testimony. The bed-fellow of this vindictive witness, who falsely stated on his *voir dire*, that he had no opinion in the case, imposed himself upon the prisoner as a juror, and found him guilty of murder. This juror, with the means of getting the version of the main witness against Cannon, made before the trial a deliberate utterance, showing a consideration of the bearing of the evidence, and a prediction that the prisoner would be convicted. Cannon did not have a fair and impartial trial.

2. The tenth charge, when applied to the defendant's evidence, means that a man, who has resentment against another, provoked by continued ill usage, is deprived of the right of self-defence; that an attempt to kill a man after having wronged and threatened him is no palliation of homicide by the latter; and that a sense of wrong is a crime of so deep a dye as to forfeit one's right to protect his life. The old and true doctrine is that, where express malice is shown to exist, and there was also apparent necessity of self-defence, the court will submit to the jury the question, whether the killing was on account of the old grudge or on the new provocation. *State* v. *Martin*, 2 Ired. 101. If upon the old grudge, and the new provocation is the pretext to shelter it, then it is murder, otherwise not. Haw. P. C. 179; Kelynge, 28. To constitute murder in such case, the apparent necessity must be employed as a disguise, 1 Hale P. C. 451; Wharton Crim. Law, § 1023; and the killing must be on account of the former malice. 1 Bish. Crim. Law, § 643; Wharton Crim. Law, §§ 946, 979. Present provocation when shown throws the burden on the State to prove that previous malice caused the act. No presumption aids. 3 Greenl. Evid. § 127. For this erroneous charge, the judgment should be reversed; because it is on a material point, and it is not manifest that it did not mislead the jury. *Mask* v. *State*, 36 Miss. 77; *Josephine* v. *State*, 39 Miss. 613.

*T. C. Catchings*, Attorney General, for the State, made an oral argument and filed a brief.

1. The red ink " No. 28," with the date of filing and the signature of the foreman, identifies this indictment as the one numbered twenty-eight mentioned in the entry, as found and returned into court by the grand jury.

2. The expression used by the juror did not amount to an opinion as to the guilt or innocence of the accused. The instructions, taken as a whole, expounded the law correctly, and the testimony fully warranted the verdict. The result, being right, will not be disturbed on the ground of immaterial errors. The proof is clear that, while the defendant had been considerably provoked and irritated by the conduct and language of the deceased, nevertheless, at the time of the killing, he was in no danger, but shot a man who did not see him.

CAMPBELL, J., delivered the opinion of the court.

The evidence of the finding and presentment in court of the indictment by the grand jury is sufficient, and the motion in arrest of judgment was properly overruled.

An effort was made to show that Caroline Austin had testified, before the justice of the peace, to certain matters as to which she testified differently on the trial in the Circuit Court, and it. was proposed to show that the counsel for the accused had commented, in the presence of Caroline Austin before the justice of the peace, on the impossibility of the truth of her testimony in certain particulars, wherein it was contended that she had, since hearing such comments, varied her testimony. The obvious purpose of the evidence offered was to suggest a motive in the witness for the alleged variance ; *i.e.*, to escape, on the argument of the case in the Circuit Court, the criticism of her testimony which had been made on the trial before the justice of the peace. Great latitude is allowable on cross-examination to show bias and wrong motives in the witness, with a view to lessen the credibility of a witness thus impelled, and answers of a witness to questions as to bias and motive may be contradicted by evidence pertinent to show the bias of the witness who denies it when interrogated. But we know no legal mode of discrediting a witness except by cross-examination, conviction of an infamous offence, impeaching the general character for truth, and impeaching the credibility by evidence of contradictory statements at different times on a material point in the case, including, as above stated, the contradiction of the answers of the witness when interrogated as to bias or motive.

When it is proposed to discredit a witness by proving that on a former occasion he made a statement inconsistent with his statement on some point material to the issue, the *fact* of such contradictory statement, and not the reason for it, is the true subject of inquiry. If a witness, in attempting to explain how he came to make variant statements at different times, were to deny the occurrence of something bearing directly on the admitted variance, it may be that it would be allowable to show the occurrence thus denied ; but that is not the case here presented. The witness did not admit any contradictory state-

ment in her testimony on the different occasions, and, therefore, did not attempt any explanation of what she did not admit. She was not asked as to having heard the comments of counsel . on her testimony in the examination of the case before the justice of the peace. The accused was allowed to show the alleged contradictory statements of the witness. The extent of the variance, and its influence as affecting the truth of her testimony, were to be determined by the jury from the fact of the discrepancy, if any, in her statements on the two occasions, without the independent testimony offered to lay the basis of a conjecture as to the motive in making the contradictory statements. Such testimony is too vague and uncertain to be relevant to the issue. It would lead to an undue multiplication of issues in a case. If the testimony offered and rejected had been admitted, it might have led to the inquiry as to what was said by counsel in their comments, and whether this was heard by the witness and how she understood it, and what effect it was calculated to have on her, all with a view to calculate the probabilities that she had been thus induced to change her testimony. The inquiry was too remote, and no error was committed in excluding the testimony offered.

The refusal to permit the witness, Smith, who was the justice of the peace before whom the accused was tried, to answer that Dr. McCallum was not examined before him as to the possibility of a certain wound having been received by the deceased while he held his gun back of his neck with both hands, was proper for the reason above given, and for the further reason that it does not appear that Caroline Austin had testified to the fact that the deceased was holding his gun in that position when he was shot, and the proposed testimony was not contradictory of her testimony, to contradict which was the object of the examination on this point.

The tenth instruction for the State should not have been given. It is true that, when a premeditated design to kill or do other great bodily harm is ascertained to have existed, and there is a consequent unlawful killing, apparently in pursuance of such design, any provocation which immediately precedes the act of killing is to be thrown out of the case and to go for nothing, unless it can be shown from the circumstances of

the killing that the purpose to kill or do great bodily harm .was abandoned before the act was done. The purposes of men can be determined only by their declarations and acts, and when one evinces a purpose to harm another, and does it when opportunity offers, it is rational to ascribe his act to his previously formed purpose, — to regard it as the consummation of his design, and to deal with him as having done what he had planned, not permitting him to shield himself by mere provocation which supervened. The safety of society requires that he who is bent on mischief and revenge shall not escape the just consequences of his unlawful acts, merely because of some provocation by his victim while he is in pursuit òf his unlawful purpose. One may have ill-will towards another, and yet have no desire or purpose to kill him, or to do him any bodily harm. If a person who kills another acts in truth from malice, and makes the appearance of necessity for his own defence the pretext to execute his purpose of revenge, he is guilty of murder ; for malice is not to be covered by a pretence. If one designing to harm another seeks and brings about an altercation in order to accomplish his purpose, he cannot claim that the killing of his adversary shall be reduced to manslaughter because of a provocation, which, under other circumstances, would so reduce it. One cannot create a necessity for an unlawful purpose, and justify his action by the necessity thus created. But if A bears malice towards B, and they meet casually, and B assaults A, and he shoots B, the rule of referring the motive to the previous malice will not apply. A mere grudge, or malice in its general sense, is not sufficient to bring a case within the principle that, where one having express malice towards another kills that other, the killing is referable to the previous malice and not to a provocation at the time of killing. To do this, there must be a particular and definite intent to kill, so that the provocation is a mere collateral circumstance, the intent to kill existing before and independently of it. *State* v. *Johnson,* 2 Jones (N. C.), 247. It is for the jury to say whether the act of killing proceeded from a deliberate purpose previously formed to kill, then and there carried into effect in pursuance of the previous concerted design, or whether the act was done because of the present circumstances, without

regard to the previous design. If a killing proceeds from a wicked intent previously entertained, and upon a pretext as a cover for such intent then acted on, the killing is referable to the previous intent and is murder.

The tenth instruction was drawn from the language of the opinion of the court in *Riggs* v. *State*, 30 Miss. 635. In that case, the effort was to reduce the grade of the killing from murder to manslaughter. There was evidence of an altercation terminating in a fight, and the death of one of the parties by the hand of the accused, who was shown to have had a previous grudge against the party killed, and to have threatened to kill him, and to have concealed on his person a weapon upon the approach of his adversary. It was justly held that a mere provocation at the time of the killing did not free the party from the guilt of murder. The use of the word " provocation " in the tenth instruction was calculated to mislead. The killing in this case was either an assassination upon lying-in-wait, or it was in self-defence. There is no hint in the evidence of any provocation, in the legal or popular sense of that term. The instruction must have been understood as conveying the idea that, if the accused had malice towards Martin, he was denied the right to kill in self-defence, which is not true.

Whatever be a man's feelings towards another, he is not required to submit to be killed by him. He is not deprived of his right of self-defence. His right, in that respect, is the same as that of any other person. He may not seek a pretext to gratify his malice. He may not engage in a contest in order to gratify it. But when attacked he may defend himself, even to taking the life of his assailant if that is necessary to his defence, provided he did not invite the attack in order to furnish an occasion to slay his adversary. As was said in *Riggs* v. *State*, *ubi supra*, " a previous threat or grudge is evidence of express malice, and it goes to fix the character of the killing afterwards perpetrated, unless circumstances be shown to alter or mitigate it, and to relieve it from the imputation of malice." The office of evidence of a previous " grudge " is to fix the character of the killing as malicious, and therefore murder, if the circumstances of the killing do not relieve it of

this imputation.  The value of the evidence is to be determined by the jury.

In this case, there was no altercation between the parties, — no blow, or " provocation," at the time of the act of killing, but either a lying-in-wait and shooting down of Martin by the accused, who had posted himself under cover to do this, as contended by the State, or a shooting by the accused to keep from being shot, as he insists.  If the accused stationed himself where he was, armed with a gun, for the purpose of killing Martin when he should come within range of the gun, and resolved to do so at all events, or on the pretext of a demonstration against him by Martin induced by his acts, and he killed Martin under these circumstances, he cannot shelter himself under the necessity which his own conduct created to kill Martin in order to keep from being killed.  But the fact that the accused entertained ill-will towards Martin, or had made threats against him, did not deprive him of his right to defend himself if he was not determined to kill Martin, and did nothing to provoke a hostile attack by Martin, but was attacked by him and he shot him only to protect himself from great personal injury then about to be done him, as indicated by the present hostile demonstration by Martin, and not from a previously formed purpose to do it.

In view of the extremely liberal instructions given at the request of the accused, and the difficulty of discovering how any injury could have been done him by the tenth instruction for the State, we might not reverse the judgment but for the action of the court in refusing a new trial, because of the fact that McAllister, one of the jurors who was accepted and tried the case, had prejudged it unfavorably to the accused, but on his *voir dire* had stated that he had not formed or expressed an opinion as to the guilt or innocence of the accused, who at that time, was ignorant that he had prejudged the case unfavorably to him.  It is well settled that this is good reason for a new trial.  We are aware of the vulnerability of verdicts on this ground, and of the danger to which it exposes them, especially at this time; and, if the court below had disbelieved the evidence of the charge that the juror had prejudged the cause, we should concur and affirm the judgment on this point; but,

instead of that, the bill of exceptions shows that the circuit judge expressly stated that he assumed as true that the juror had expressed an opinion of the case unfavorable to the accused, and on this assumption the new trial was refused. This was error, for which the judgment must be reversed.

*Judgment reversed, and cause remanded.*