# W. W. HELM *v.* THE STATE.

1. FORMER JEOPARDY. *Discharge of jury. Time for deliberation. Question of law.*
   Where, in a plea of former jeopardy, it is averred that on the previous trial the jury retired to consider of a verdict on Saturday at half-past 4 P.M., and were discharged, against defendant's consent, and without legal necessity, on the following Monday at half-past 11 A.M., to which the state replies that the discharge was because the jury could not agree, it is proper to refuse to submit to the jury the question whether the time allowed for deliberation was sufficient. The sufficiency of the time allowed for that purpose is a matter of law, and the court decides that the time stated is *prima facie* sufficient.

2. SAME. *Failure to agree. Question for jury.*
   In such case, although the time stated is sufficient, the manner in which the jury employed their time, and other facts showing whether there was legal necessity for discharge, are questions for the jury ; and, if the evidence shows that, after being kept together the time stated, the jury could not agree and were discharged for that reason, the verdict should be for the state on this issue.

3. SAME. *Testimony of judge and jurors competent.*
   On the trial of the issue whether the jury were discharged because they could not agree upon a verdict, the testimony of the judge who presided and the discharged jurors is competent.

4. CRIMINAL PROCEDURE. *Loss of indictment. Substitution. Former jeopardy.*
   A criminal pleading, even in a felony case, may be supplied by substitution. Where, after arraignment on a charge of murder, and during the trial, the indictment, found at a former term, is lost, and another identical with it is returned by the grand jury, and is, by order of the court, substituted, and afterwards, the original being found, the substitute is withdrawn and the trial proceeds, a verdict of guilty of manslaughter being returned on the original indictment, there is no error. This verdict being vacated on appeal and a new trial granted, the action of the court on the indictment cannot be availed of on a subsequent trial under a plea of former jeopardy.

5. HOMICIDE. *Declarations of deceased not in articulo mortis. Not evidence.*
   On a trial for homicide, declarations of the deceased in regard to the difficulty, made after his wounding, but not under a belief of impending dissolution, are not admissible in evidence. Though favorable to the accused, they cannot be introduced as declarations against interest.

6. JUROR.    *Competency.    Bad opinion of defendant's character.*

One who has no hostility to the accused, and who is not shown to be so biased by a preconceived opinion as to render him incompetent as a juror, is not disqualified, though he may have a bad opinion of the defendant's character.

7. WITNESS.    *Credibility.    Conviction of crime.*

Under § 1607, code 1880, providing that the record of conviction of any witness of a "crime" may be given in evidence as affecting his credibility, and § 3105 declaring "any violation of law" a crime, the record of a conviction of a witness for the larceny of a hog without felonious intent, a mere misdemeanor, is admissible.

8. PRACTICE.    *Continuance.    Case in judgment.*

Defendant was convicted of manslaughter December 5, and on the 9th his motion for a new trial was overruled. On the hearing of this motion a witness, Bell, testified that a juror, Johnson, had, before the trial, in the presence of one Defoor, asserted his belief in defendant's guilt. Johnson testified to the contrary. No steps were taken to secure the presence of Defoor until the 12th, when defendant made a motion to recall sentence, and filed in support of it his affidavit, stating that since the overruling of his motion for a new trial he had learned that Defoor and two other witnesses would testify that Johnson made the statements. Defoor lived in the country twenty miles. Subpœna was issued for him on the 12th, and was served on the 13th. The court passed the motion on the 12th, and waited for Defoor until the next day. He did not appear, and the motion was overruled. The other two witnesses were present, but were not introduced. *Held*, that the refusal of the court to wait longer for Defoor was not error.

9. HOMICIDE.    *Self-defense.    Difficulty provoked by accused.    Instruction.*

On a trial for homicide the following instruction, applicable to the facts, is not erroneous : " If the minds and consciences of the jury are fully satisfied by all the evidence in the case that Helm was hunting King to kill him, armed with a deadly weapon provided for that purpose, and that when he found King he provoked a difficulty with him, in which he killed King, or was the aggressor in the difficulty in which he killed King, then he is guilty, even though he killed him in self-defense." *Cannon v. The State*, 57 Miss. 147 ; *Allen v. The State*, 60 Id. 385, cited.

FROM the circuit court of Yazoo county.

HON. J. B. CHRISMAN, Judge.

In 1887 the appellant, Helm, was indicted in the court below for the murder of one King. At the June term, 1888, he was tried, and the jury failing to agree upon á verdict, were discharged. At

the next term he was again put upon trial, and was convicted of
manslaughter. He prosecuted an appeal to this court, and obtained
a reversal. The ground upon which the judgment was reversed
was this : The defendant on his second trial had pleaded former
jeopardy, setting up in his plea that on the first trial, after the evi-
dence was in and after the argument of counsel, the case was duly
submitted to the jury for decision on Saturday at half-past four
P.M., when they retired to consider of a verdict, and that on the
following Monday at half-past eleven A.M., the court, without
the consent of defendant, discharged the jury, and that "said dis-
charge of said jury was not compelled by any physical or legal
necessity." The court below sustained the demurrer to this plea.
This court held that the plea was good, reversed the judg-
ment, and remanded the cause for a new trial, with leave to
the state to reply to the plea. See *Helm* v. *The State*, 66 Miss.
537. The case being remanded, the state filed a replication admit-
ting that the jury retired to consider a verdict, and afterwards came
into court and were discharged, but averring "that the said jury
were discharged because they could not agree." The defendant
moved to strike out this replication, and afterwards demurred to it.
Both the motion and demurrer were overruled, and the issue raised
by the replication to this plea was submitted to a jury. On the
trial of this issue, the judge who presided at the former trial and
several of the discharged jurors, were permitted to testify against
the objection of the defendant. The evidence tended to show that
the jury could not agree, and that they were discharged for that
reason. After retiring, they deliberated until near midnight on
Saturday, when they sent the presiding judge a communication
stating that they could not agree, and asking to be discharged.
On Monday morning they sent two other communications to the
same effect, in one of which it was stated that it was impossible for
them to agree, and that one of their number was sick. Several of
the jurors testified that they were irreconcilably divided, and that
it was impossible for them to agree upon a verdict. The presiding
judge testified that he was convinced that the jury could not agree,
and for that reason discharged them on Monday. He stated that

the term of court had expired, and that he knew the jurors were anxious to get home, as he was, but that the discharge was solely because he was convinced that there was no possibility of a verdict. On these facts, the court instructed for the state that if the jury could, or would not have agreed upon a verdict if kept together longer, they must find for the state.

The court refused to charge for defendant the following :—

1. If the jury were discharged for any other reason than they could not agree, and this beyond a reasonable doubt, the jury must discharge defendant.

2. If the court, without sufficient legal necessity, discharged the jury, or if there is a reasonable doubt of this, the jury must find for defendant.

3. The jury must believe, beyond reasonable doubt, that the jury were discharged because they could not agree, or discharge the defendant.

6. If the discharge was before time for reasonable deliberation, the verdict should be for defendant.

The jury found the issue in favor of the state, and a motion for a new trial was overruled.

Thereupon, the defendant filed another plea of former jeopardy in this that, at the December term, 1888, he was tried for murder, and after all the testimony was in, the indictment was withdrawn without his consent and the indictment now pending was substituted for it, and after this substitution and after argument and instructions, the jury found him guilty of manslaughter and never brought in any verdict on the indictment upon which he was arraigned.

To this the state replied that it was ascertained that the original indictment was lost, and on proof of this the court permitted the state to proceed upon an indictment returned at the term of the trial as a copy, but that afterwards, pending the trial, the original was found, and thereupon the court permitted the withdrawal of the copy and the substitution of the original indictment, concluding with an offer to verify by the record. Defendant rejoined, traversing and concluding to the country.

The state's demurrer was sustained to the rejoinder, in so far as it concluded to the country. Issue was then joined and the court, on an inspection of the record, found the issue in favor of the state. Motion for a new trial on this issue was overruled.

Defendant was then put upon his trial for manslaughter on the original indictment, and was convicted. After motion for a new trial overruled, he prosecuted this appeal.

The other facts necessary to an understanding of the case are stated in the opinion of the court.

*Calhoon & Green,* for appellants.

1. We submit that the evidence shows that the discharge of the jury on the previous trial was without any physical or legal necessity. On the former appeal this court said: " It is overruling necessity that justifies the discharge of a jury without the consent of the prisoner." 66 Miss. 537. Here the jury retired Saturday afternoon, and were discharged Monday morning. Sunday intervened and they deliberated, say eight hours in all. Will the court say that this is a reasonable time in a murder trial? We submit that the testimony of the presiding judge as to his reason for discharging the jury is wholly insufficient. Nothing but actual physical or legal necessity could justify the discharge, and it is practically admitted by the judge that none such existed in this case. The main ground upon which he seems to have acted is that from his knowledge of the jury he was convinced that they could not agree. This certainly cannot be taken as legal evidence. The written communication from the jury amounted to nothing. It is a favorite dodge of juries to begin plying the judge with notes that they are unable to agree. The fact that the jury lived at a distance, and were anxious to get home, could not be considered. The judge lives at a distance, and he wants to get home, and the prisoner in jail is also very " anxious to get home." Now the judge testifies that all these things operated on his mind to induce a discharge. This being so, the discharge was unlawful.

The replication of the state is that the jury were discharged because they could not agree. It does not deny former jeopardy,

nor does it aver that the jury could not agree *after sufficient delibera-tion.* There was really no issue. The averment that the jury " could not agree" is not susceptible of proof or counter-proof. The record itself must show a physical or legal necessity for the discharge. Once on trial before a jury, and the person is in jeopardy. To avoid this, the record must show a valid reason for a dismissal. There are no intendments. The record must show every step in a legal and orderly manner.

We submit that the note from the jury to the judge was incompetent, and so was the testimony of the juror Kelly, and the instruction given the jury to find for the state if they believed that the former jury " could not and would not have agreed was improper." These all carry out the false issue tried. For these reasons, we submit that the judgment must be reversed.

2. It was error to permit a copy of the indictment to be used on the trial of the case. Here there were two different indictments, by different grand juries, at different terms of the court. We know of no law authorizing a trial on a copy when an indictment is lost. Section 2293, code 1880, does not apply to criminal proceedings. The statute and the constitution require a trial on the indictment, or on a certified copy in case of a change of venue. The substitute was not a copy of the original indictment, but it was a separate indictment. What rights has a prisoner in such mixing of records? And what rights has he on pleading former jeopardy where the court confines to a mere inspection of the record?

3. It was error to grant the motion for a new trial because of the bias of the juror Johnson, and in not waiting for the newly-discovered evidence as to this. The court has gone further than this in requiring jurors to be above suspicion. The evidence here not only throws suspicion over Johnson, but makes it clear that he was an unfair juror.

4. The court should have permitted the witness, who testified as to what King said before his death about the shooting, not as a dying declaration, but as a declaration against interest. We are aware it has been held differently. 1 Wharton Cr. L., § 682. But we are unable to see why the rule should be different in civil and

criminal cases. Men are less apt to put themselves in the wrong in *fights* than in *money matters*.

5. It was error to admit the record of the conviction of the witness, Mise, of a misdemeanor. It is a conviction of crimes only which may be offered. Code, §§ 1600, 1607. The case should be reversed for this.

6. The eighth charge for the state is clearly illegal and most dangerous to the prisoner. The essential qualification is omitted that the defendant must have been provoked to fight, and killed King in pursuance of the original intent.

*R. N. Miller*, district attorney, and *T. M. Miller*, attorney-general, for the state.

The proper issue was submitted to the jury on the defendant's plea of former jeopardy. The plea itself stated the length of time the jury had been in deliberation, and this court on the former appeal held that this length of time was *prima facie* sufficient. See 66 Miss. 537. The length of time during which the jury is to be kept for the purpose of deliberation before they can be discharged against the consent of the prisoner, is a matter of law to be decided by the court. Therefore, it was proper for the court below to refuse to submit this question to the jury. On this point see 1 Bish. Cr. Pro., §§ 1048, 1095 and notes; *Murphy* v. *The State*, 28 Miss. 637. The only question for the jury to decide on this issue was, whether or not the discharge *was because the previous jury could not agree upon a verdict*. This has been found in the affirmative, showing the legal necessity for the discharge. We submit that the evidence is abundant and overwhelming that the jury could not agree, and that they were discharged for that reason.

If the testimony of the judge who presided and the jurors themselves was not competent on the question of fact as to whether the jury could not agree, we are unable to apprehend how the facts could ever be proved. This was not an effort to impeach the verdict by the jurors who rendered it, but simply proof of facts going to show the legal necessity which existed for discharging the jury.

2. It was not incompetent for the court to order the substitu-

tion of the indictment when it was shown that the original had been lost. The record shows that the court adjudicated the fact that the original had been lost, and that the substitute was identical with it. As to the power of the court to authorize the substitution independent of the provisions of the code, see *Welch* v. *Smith*, 65 Miss. 394; *Bowman* v. *McLaughlin*, 45 Ib. 461; *People* v. *Burdock*, 3 Caines, 104; *Miller* v. *The State*, 56 Ind. 187; *Bradford* v. *The State*, 54 Ala. 230; 1 Bish. Cr: Pro., §§ 1398, 1400.

3. The statement of King after being wounded was clearly incompetent, and the court properly excluded it. The defense attempted to lay the foundation for introducing it as a dying declaration, but wholly failed. The idea that this statement was admissible, as having been made against interest, is certainly a very novel one.

4. The assignment of error based upon the alleged bias of the juror Johnson, we submit is not well taken. What the juror said about the case was evidently in jest. He was a man of good character, and denied being biased, or having made the statement attributed to him. It was not shown that he was unfriendly to the defendant. His competency was a question for the court below to pass upon. *Cannon* v. *The State*, 57 Miss. 156.

5. The record of the conviction of the witness, Mise, was properly admitted, in order to affect his credibility. Code 1880, §§ 1600, 1607.

6. The court properly refused to wait longer for the witness, Defoor. There was no diligence. Certainly there was no law to compel the court to wait longer for Bell and other friends of the defendant to fish up testimony upon which to assail the verdict of the jury, when the court had finished all its business and was ready to adjourn.

7. The eighth instruction was properly given, being based upon the evidence, and it was "most dangerous to the prisoner," but not for that reason illegal. A man who, armed with a deadly weapon, hunts up another to kill him, and who provoked the difficulty, cannot be heard to talk about self-defense. *Hinson* v. *The State*, 66 Miss. 532; *Cannon* v. *The State*, 57 Ib. 147.

WOODS, C. J., delivered the opinion of the court.

The plea of former jeopardy alleged that the jury, on the former trial, retired to consider of their verdict at 4.30 P.M., June 23, and were discharged on the morning of the 25th at 11.30. The sufficiency of time for due deliberation had, by this court, on the former appeal, been declared to be established *prima facie* on this undenied allegation as to the length of time employed by the jury in deliberation. This allegation as to time was confessed and undisputed by the state on the last trial of the defendant's plea. Its sufficiency for due deliberation, *prima facie*, had been passed upon by this court affirmatively, and this *prima facie* case was not destroyed by any evidence offered on the hearing of this plea of defendant; and the propriety or necessity of submitting to the jury the question of the sufficiency of the time for due deliberation shown to have been consumed by the jury in considering the cause, is not apparent to us. The question of the time itself, was one of fact which really needed no proof, as no issue on the allegation of the plea, as to time, was raised by any pleading of the state: the manner in which the jury employed its time, and the facts showing whether there was legal necessity for its discharge, were questions for the jury's determination.

The issue on which the jury passed, was clearly that of the existence of facts showing legal necessity for the discharge. Without dwelling in detail on the various steps taken to bring the pleadings to a definite issue, it is sufficient to say that the court finally and substantially submitted to the jury this question of fact, viz., were the jury discharged on the former trial of defendant because they could not agree? If the issue was found affirmatively, then the legal necessity was made out. If the issue was found negatively, then the legal necessity did not exist, and the prisoner was entitled to discharge. We are of opinion that the real issue was properly made up and submitted to the jury, and we are of the further opinion that the jury properly found the issue for the state.

This view seems, virtually, to be conceded to be correct by appellant's counsel, for in discussing this branch of the case, we find this sentence in counsel's brief: "Time was susceptible of proof,

and the court could decide upon its sufficiency, if the issue was left to the jury." This is in perfect accord with our view. The time consumed by the jury was one of fact and susceptible of proof: the sufficiency of time for due deliberation was a legal question for the court, and one that was not to be submitted to the jury.

But it is insisted that the testimony of the trial judge who presided on defendant's former trial below, as well as that of the jurors who were discharged on that trial, was improperly given to the jury. We are at a loss to imagine why the *facts* on which the trial judge acted in considering the question of legal necessity for discharge—the facts then in his possession, and which satisfied his mind that the jury could not agree, and the facts disclosed by the jurors themselves which demonstrated that they could not agree— were not competent evidence on the trial of the issue presented. It occurs to us that this evidence of the judge and the jurors was not only free from objection, but was the very best evidence that could have been offered.

As to defendant's second plea of former jeopardy, we are of opinion that there was no error in the action of the court below, in its dealing with this plea. The defendant was arraigned and the verdict rendered on the original indictment. During the progress of the trial, it was ascertained that this indictment had been lost, and the state was permitted to substitute another indictment, then returned into court by a grand jury, at the time in session, identical with the lost one: but before the case had been given to the jury, the original indictment was found, and was handed to the jury on its retirement, the substituted one having been withdrawn. The defendant was not in any way prejudiced by this action; indeed it is impossible to conceive how any hurt could have occurred to him by this course. We cannot bring ourselves to sanction for a moment the idea that whenever an indictment, which is a criminal pleading, is lost, or mislaid, or stolen, during the progress of a trial for a capital felony, that there can be no substitution of the missing paper, but that in every such case, there must follow the discharge of the prisoner. We hold to the reasonable rule that a criminal

pleading, like any other, may be supplied by substitution, in some proper way—in the manner prescribed by law. ·

Touching the error alleged by defendant's counsel, to be found in the refusal of the court to permit the witnesses, Johnson and Dickson, to testify to what King, the deceased, said after his wounding and before his death, we are of opinion that the action complained of was altogether proper. The record shows that this testimony was sought to be introduced as containing the dying declaration of the deceased; but this propsition is so palpably indefensible, that it is abandoned here, and its attempted introduction sought to be justified on the ground that they were declarations made against the declarant's interest, and therefore admissible here, as in civil proceedings. · This doctrine has never received the sanction of any court, so far as we are advised, nor does the able and acute counsel offer any support derived from reason. We cannot see the slightest analogy between declarations made against interest by a suitor in a civil proceeding and declarations by a slain man, not made *in articulo mortis* under a sense of impending dissolution, and after an abandonment of all hope by the declarant. How any declaration can be said to be against the interest of a man already passed into the other world, and beyond the reach of every earthly tribunal and all earthly power, is wholly incomprehensible by us.

The assignment of error, which raises the disqualification of the juror Johnson because of his prejudice is not well taken. There is nothing in all the evidence on this proposition which is even persuasive to show that Johnson was not altogether competent to serve as a juror. The juror is not shown to have ever heard what the evidence, or any part of it, was before he heard it in the jury-box, and it seems impossible that he could have either formed or expressed an opinion as to defendant's guilt in the absence of proof of any knowledge of the evidence. He is shown, fairly well, to have had not a favorable opinion of the character of the accused (and perhaps no better opinion of that of the deceased), but if a good opinion of the character of every accused person shall be held requisite for qualification for jury service, then the worst class of criminals must ordinarily go unwhipped of public justice. There

was no hostility or unfriendliness to the man; there was, at the most, disapprobation of his unlovely character. But this did not and should not be held disqualification of the person as a juror. Nor was there such evidence of a preconceived opinion as will warrant us in saying the court below was not justified in refusing to believe that the juror, in this instance, was so biased as to unfit him for jury service.

The introduction of the record of the conviction of defendant's witness, Mise, on a charge of larceny, of the taking a hog without felonious intent, was not error. Under § 1607 of the code of 1880, the record of the conviction of a witness of any "crime" may be given in evidence, as affecting the credibility of such witness; and § 1305 declares that any "violation of law" is a crime, in the general sense in which that word is employed in § 1607.

It is contended for appellant that the refusal of the court to wait longer for the witness Defoor, that he might testify on defendant's motion to recall the sentence and for a new trial, is also error. The judgment of the court below in overruling defendant's motion for a new trial was made on the 9th day of December. In support of the motion for a new trial, a witness, Bell, testified that Defoor was present and heard the statements desired to be introduced as showing why sentence should be recalled and a new trial awarded, and yet no steps were taken by defendant to secure Defoor's presence until the 12th day of December, though defendant and his counsel were both in court when Bell made his statement touching Defoor's knowledge of the facts on this point. The court did await Defoor's arrival until some time during the day following, and then, declining to wait longer, overruled the motion. There were two other persons who were said by the witness Bell to have been present and heard the statements, to testify concerning which Defoor was desired as a witness. These witnesses were duly subpœnaed and appeared, and neither were introduced by defendant in support of his motion. Under all the circumstances, we cannot say the court's action was either arbitrary or unreasonable.

We deem it necessary to consider only one other assignment of error. The 9th instruction given for the state is in these words: " If the minds and consciences of the jury are fully satisfied by all the evidence in this case that Helm was hunting King to kill him, armed with a deadly weapon provided for that purpose, and that when he found King he provoked a difficulty with King, or was the aggressor in the difficulty, in which he killed King, then he is guilty, even though he killed King in self-defense." We see no error in this charge, under the facts proved on the trial. It is in complete harmony with the law as announced in *Cannon* v. *The State*, 57 Miss. 147, and in *Allen* v. *The State*, 66 Ib. 385. There could be no other rule of safety so long as the violent hunt up their victims to slay them. How shall a man be heard in a court of justice to discourse of the divine right of self-defense while his hands are yet red with the blood of the object of his malice, whom he has sought out for the purpose of killing him, armed suitably to accomplish his murderous design, but whom, having been found, he has provoked, or driven, into a rencounter and then put to sudden, cruel death? Let it be understood, at any rate, that such plea of self-defense will not avail to save in this court of last resort.

The judgment of the court below was abundantly warranted by the evidence, and is approved by us.

*Affirmed.*