BOND v. STATE.

[95 South. 87. In Banc. No. 22983.]

1. HOMICIDE. *Evidence held sufficient to support conviction for murder.*
   Where one is convicted of murder, and from all the testimony the jury may believe that the appellant was the aggressor, that he and the deceased engaged in a fist fight in which several licks were passed,

but no material damage was done to either, whereupon they were separated for a few moments, when the difficulty was renewed, and appellant either walked or backed across the length of the room, and reached in the door and got a pistol from his coat pocket which was hanging inside the door, and thereupon fired one shot into the floor, hoping to make the deceased stop the assault upon him, and shortly thereafter firing a second shot into the body of the deceased, from which wound he died within a few hours, under this testimony the jury were warranted in returning this verdict. The testimony as to who was the aggressor and how many were engaged in the fight with the appellant is conflicting.

2. HOMICIDE. *Verdict of not guilty would have been warranted under evidence supporting plea of self-defense.*

The appellant and several witnesses testified that at the time of the killing the deceased and two other men were assaulting him and attempting to cut him with knives. Under this testimony the jury would have been warranted in returning a verdict of not guilty.

3. HOMICIDE. *Evidence held for the jury.*

Under all of the testimony it was a question of fact for the jury, and they could have found the defendant guilty of murder, manslaughter, or not guilty, as they accepted or rejected the evidence.

4. JURY. *Juror held not disqualified for statements made before being called as to matter not in issue.*

One is not disqualified to serve on a jury who, before being called as a juror, stated that he did not see how a jury which was to try appellant for murder could disregard the reputation of the family of appellant, when the reputation of the family was not an issue before the jury, and when the juror properly qualified on his *voir dire* examination.

COOK and ETHRIDGE, JJ., dissenting.

APPEAL from circuit court of Lamar county.

HON. A. E. WEATHERSBY, Judge.

Everett Bond was convicted of murder, and he appeals. Affirmed.

*E. A. Anderson* and *C. Anderson,* for appellant.

The state's statute does not alter the common law so as to limit murder to killing with expressed malice. The words, "premeditated design" in the old statute, means

the same as "malice aforethought" in the common-law definition. *McDaniel* v. *The State*, 8 Sm. and M. 401.

Expressed malice cannot enter into this case for there was no premeditated design nor expression of malice towards the deceased, but on the contrary the appellant wanted to be a peacemaker, and he could not have acted upon a deliberate mind and a formed design to kill and murder the deceased or anyone else at the Bohemian dance. See 30 Miss. 673; also *Higgins* v. *State*, 30 Miss. 635.

Appellant further shows unto the court that on the third and fourth and seventh ground of the assignment of error of the appellant that a conviction of murder on evidence which raises only the issue of self-defense or manslaughter, will be reversed. *Jones* v. *The State*, 98 Miss. 899.

The appellant further says and shows unto the court that the state failed to make out a case of murder, and that the instruction for murder should not have been given by the court and that the evidence introduced by the state could have been construed in no other way to have made out a case only for manslaughter or justifiable homicide, and the evidence offered by the state never even raised a reasonable apprehension of his guilt of murder, and the appellant should have been acquitted by the jury or proper instruction given for manslaughter by the court. *Cumberland* v. *State*, 110 Miss. 521.

Appellant further says and shows that this case should be reversed and remanded for malice, was and is a necessary element of murder, and that the state failed to show any malice or any premeditated design on the part of the appellant. *Guest* v. *The State*, 96 Miss. 871. Also that if the facts in the trial of this case fail to show that the killing was done in the heat of passion and was not murder, and hence the court erred in charging as to murder. *Stiger* v. *State*, 110 Miss. 557.

Also the appellant says in the prosecution for homicide, the evidence was insufficient to sustain a conviction of murder, showing at most that the accused, in a heat of

passion, killed the deceased, who assaulted him, if the accused did not kill in self-defense it was manslaughter, and could not have been murder. *Pigott* v. *The State*, 107 Miss. 552.

MANSLAUGHTER. Manslaughter under the common law is the unlawful killing of another without malice aforethought, and is the court's distinction between murder and manslaughter. The statute of the state of Mississippi, Code of 1906, section 1236, and in Hemingway's Code, section 9,68. Homicide—killing with dangerous weapon in heat of passion. The killing of another in heat of passion, without malice, by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.

The appellant further shows unto the court that there could not have been any greater offense committed against the state of Mississippi than manslaughter from all the evidence in this case. Where killing in a quarrel in which deceased was choking and cutting on the appellant with others, when he fired the fatal shot, it was error for the court to instruct the jury for murder. *Stiger* v. *The State*, 110 Miss. 557.

It is clearly shown by all the evidence in this case that the appellant had no actual intention or malice aforethought to kill the deceased, but that he either acted on the spur of the moment in heat of passion, or in self-defense, and the charge of murder should be reduced to manslaughter and reversed or the appellant discharged.

JUSTIFIABLE HOMICIDE. Justifiable homicide under the statute of 1906 and Hemingway's Code, page 960—homicide—justifiable homicide—The killing of a human being by the act, procurement, or omission of another, shall be justifiable in the following cases: Paragraph (f): "When committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished.

The peremptory instruction asked by the appellant to exclude all the testimony offered by the state and. find the appellant not guilty should have been given, and is the appellant's first ground in the assignment of errors and also in the seventh ground of the appellant's assignment of errors, you will see the same question raised where it should be considered as a justifiable homicide by the courts. *Green* v. *The State,* 28 Miss. 687; *Cotton* v. *The Fortenberry* v. *The State,* 55 Miss. 403; *Kendrick* v. *The* v. *The State,* 55 Miss. 414; *Holly* v. *The State,* 55 Miss. 403; *State,* 31 Miss. 504; *Logan* v. *The State,* 52 Miss. 23; *Parker State,* 55 Miss. 436; *Bang* v. *The State,* 60 Miss. 671.

Appellant further shows to the court that under the sixth assignment of errors that the jury was not a jury; that is as was contemplated by the state's Constitution to give this appellant a fair and impartial trial and to pass on his guilt or innocence in the trial of this case, and that the appellant nor his attorneys knew of the disabilities as shown by the stenographer's notes and as stated in the statement of facts, in this case, and the appellant had a right to an impartial jury, and this was not a fair and impartial jury when these two jurors on their *voir dire* concealed facts which make them incompetent. Such incompetency exists when a jury has facts which cause them to indulge in fixed opinions. *Shepherd* v. *The State,* 79 Miss. 740; *Dennis* v. *The State,* 91 Miss. 221; *Jones* v. *The State,* 97 Miss. 269; *Martin* v. *The State,* 98 Miss. 626.

The above cited cases of the supreme court is enough to show that this jury was not a competent jury, and that the motion should have been sustained for a new trial and a competent jury obtained.

*H. T. Odom,* special assistant attorney-general, for the appellee.

The testimony in this case is overwhelming to the effect that the homicide was unlawful and felonious. The only testimony from which it could be inferred that the killing was in self-defense, was that of the accused himself.

Appellant's third, fourth, fifth and seventh assignments
of error contend that the question of murder was improper-
ly submitted to the jury.  In other words, appellant's con-
tention is that under the evidence he was either guilty of
manslaughter or justified in the killing of appellant.  And
this resolves itself to the proposition of whether the ap-
pellant shot with malice or in the heat of passion.  Of
course, if there is any evidence in the record from which
the jury may have inferred malice, then the court did not
err in submitting the question of murder to the jury.  Be-
cause the question of malice is not one of law to be deter-
mined by the court, but an inference from the facts and
circumstances in the case to be drawn by the jury, whose
sole duty it is to pass on the facts in evidence.  Their find-
ing the defendant guilty of murder must be upheld by this
court if there are any facts and circumstances in evidence
either for the state or for the defendant, which would jus-
tify them in inferring that appellant shot the deceased
with malice.  With this principle in mind, the entire rec-
ord of the testimony in the case, must be carefully ex-
amined, and if there are any facts or circumstances in
evidence from which malice could be inferred, then the
verdict of the jury must stand.  In reaching this verdict,
they were within the holding of this court in the case of
*Haley* v. *State,* 123 Miss. 87, 85 So. 129, where it is stated
that this question is one for the determination of the jury.
There being evidence from which malice may be inferred,
the verdict of murder should not be disturbed because there
was also evidence to justify a verdict of manslaughter.

Appellant's next contention is that he was not tried by
an impartial jury, because he claims that one of the jurors,
to-wit, Mr. Crosby, was related to the deceased, and, sec-
ond, because another juror by the name of Mr. Smalley
expressed an opinion as to the guilt of the accused before
he entered the jury box.  I am unable to see the merit of
this contention.

In the case of *Helm* v. *State,* 67 Miss. 562, 7 So. 487, it
was held that one who has no hostility to the accused, and

who is not shown to be so biased by a preconceived opinion as to render him incompetent as a juror, is not disqualified, though he may have had a bad opinion of the defendant's character. The facts in the case at bar are more favorable to the state's contention that the juror Smalley was a fair and impartial juror, than in the *Helm case, supra.*

So my conclusion, on the proposition that appellant was not tried by a fair and impartial jury, as presented by the sixth assignment of error herein, is that, since the positive evidence introduced, shows that if juror Crosby was related to the deceased that he knew nothing about it; that his relationship, if it existed, could not have influenced the juror in rendering his verdict, and that he was a fair and impartial juror, as contemplated by law. Again, since the juror Smalley had expressed no opinion, and there is no evidence that he was hostile towards the appellant that his opinion as to the reputation of appellant's family, could not render him incompetent as a juror.

SYKES, J., delivered the opinion of the court.

Everett Bond was convicted of murder, and the jury disagreed as to the punishment, whereupon he was sentenced to the penitentiary for his natural life, from which judgment of the court this appeal is prosecuted.

It is earnestly insisted by counsel for the appellant that a conviction of murder is not warranted by the testimony; that at best the defendant could only have been guilty of manslaughter; consequently, that any instruction granted the state upon murder was improper, and reversible error.

The testimony in the case is conflicting. The killing took place at a dance in the country. From the testimony it appears that one of the men at the dance was rather boisterous, when the appellant, Everett Bond, started to take him out of the house. According to the state's testimony, the deceased came up and took the appellant by the arm, and asked him not to hit the boisterous party, as he was

not able to fight. Whereupon the appellant said something to the deceased, and then struck him with his fist. Several licks passed between the appellant and the deceased, Vardie Whidden, and at some point in the difficulty deceased knocked the appellant out of the door. The appellant came back into the room, and several more licks were passed between him and the deceased, during which time the appellant backed across the room to another door, went inside this door, and took a forty-four-caliber pistol from his coat pocket and shot twice. It seems that the first shot went into the floor and the second shot penetrated the bowels of the deceased, going in about the watch pocket of his trousers, from the effects of which wound he died the next day. The testimony for the state is to the effect that no one engaged in the difficulty except the appellant and the deceased; that the appellant was a somewhat larger man than the deceased; that it was a fair fight until the appellant reached into his coat pocket and got his pistol.

The testimony for the defense is to the effect that, while the appellant was trying to stop the boisterous conduct of John Clinton, the deceased, a brother of the deceased, and Clinton all attacked appellant. Some of the testimony is to the effect that all three of the assailants of Bond had knives, and in the fight were attempting to cut him; that after Bond was knocked through the door he came back into the house, and they were separated for a few moments, but the difficulty was almost immediately renewed by Bond's assailants, at which time Bond backed to the door, and reached within and got his pistol out of his coat pocket, and fired the two shots. The testimony of the appellant himself is to the effect that the deceased struck him first, and that these three men were all attacking him; that he backed to the door, and reached in and got his pistol out of his coat pocket; that he did not intend to kill any of them, but merely to stop them from cutting at him; that he fired the first shot into the floor, hoping they would let him go; that, when they failed to do so, but were still cutting at him, he then shot the deceased. The appellant tes-

tifies briefly that when the deceased first struck him he asked him what was the matter with him, and what did he mean, at which time some one caught him by the arm and told him to quit, and he went and talked to another party, at which time his three alleged assailants were across the room, and started toward him; that the deceased got him by the throat and commenced leading him across the room toward the door, at about which time the other two attacked him with knives open, when he reached his hand in the door, and would not go any further; that the deceased cut at him under the arm, and cut his clothing, when he jerked, then pulled his hand away, reached around behind the door, and got his pistol; that the first time he shot between the deceased's legs, thinking he would turn him loose.

We have stated the testimony of the appellant somewhat in detail. From his testimony, when considered with the other testimony in the case, it was purely a question of fact to be decided by the jury as to whether or not the killing was done with the deliberate design to effect the death of the deceased, whether done in the heat of passion, and not in necessary self-defense, or whether done in self-defense. According to the testimony of the state the appellant and the deceased were only engaged in a fist fight, the appellant being a somewhat larger man than the deceased, and from the testimony they were evidently well matched physically. Neither seems to have been done any harm in the fisticuffs. The appellant, according to his own testimony, does not seem to have been in a great heat of passion after the first assault, and when they were separated. From this testimony the jury were warranted in believing that he either walked or backed across the room for the express purpose of procuring his pistol out of his coat pocket and killing the deceased. We find no error in submitting the question of murder to the jury.

It is next insisted that the testimony upon the motion for a new trial showed that one of the jurors was related to the deceased. After a most careful examination of this

testimony, it is impossible to tell from it whether any relationship existed. Therefore the record shows no such fact.

It is also insisted that a juror by the name of Smalley was not a fair and impartial juror, because while he was sitting in the courtroom, and before being called to serve on the jury, he and another person were discussing the Bond family and the various troubles that this family had had; that this juror then told him that a jury "just couldn't disregard the reputation of the family in this case; it looked like that would have some bearing in making up their verdict; it looked like a fellow just couldn't help it." This particular case was not discussed, but the general reputation of the Bond family. The witness further stated that Mr. Smalley was a good man. Smalley properly qualified as a juror. The reputation of the Bond family in general was not one of the issues being tried by the jury. We assume that Mr. Smalley did his duty, and tried the case fairly and impartially, according to the testimony, and according to the oath taken by him as a juror.

The language of the opinion of the court in the case of *Helm* v. *State,* 67 Miss. 562, 7 So. 487, is peculiarly applicable. In speaking of a juror who sat in that case the court said:

"He is shown, fairly well, to have had not a favorable opinion of the character of the accused (and perhaps no better opinion of that of the deceased), but if a good opinion of the character of every accused person shall be held requisite for qualification for jury service, then the worst class of criminals must ordinarily go unwhipped of public justice. There was no hostility or unfriendliness to the man; there was, at the most, disapprobation of his unlovely character. But this did not and should not be held disqualification of the person as a juror. Nor was there such evidence of a preconceived opinion as will warrant us in saying the court below was not justified in refusing to believe that the juror, in this instance, was so biased as to unfit him for jury service."

After a careful scrutiny of the record, we find no re-
versible error in the record, and the judgment of the lower
court is affirmed.

*Affirmed.*

Cook, J. (dissenting). After a careful and repeated ex-
amination of all the testimony in this case, I am convinced
that it does not warrant a conviction of a higher crime
than manslaughter.

The state introduced only one witness, Eddie Whidden,
a brother of the deceased. This witness testified that the
defendant and one John Clinton became involved in some
sort of a difficulty in a room where a dance was in progress;
that the deceased interfered in this difficulty, taking sides
with Clinton; that the defendant and deceased then en-
gaged in a fist fight, several licks being passed; that de-
ceased knocked the defendant out of the house through a
door; that defendant immediately came back into the
room, and the fight between the defendant and deceased
continued; that as the fight progressed they came into or
near a door which led into an adjoining room; that at this
point in the fight he saw defendant with a pistol, but did
not know where he got it; that deceased then had hold of
defendant about the collar, and while in that position de-
fendant fired two shots, one of them entering the stomach
of the deceased.

There were several eyewitnesses introduced by the de-
fendant, from whose testimony it appears that John Clin-
ton became enraged because some of the women present re-
fused to dance with him; that he pulled his knife, and
with a vile oath threatened to kill any one who attempted
to dance; that defendant came to Clinton, and in a peace-
able manner asked him not to cause a disturbance, and
took Clinton by the arm and tried to get him to leave the
room; that Eddie Whidden, the state's witness, and Clin-
ton's brother-in-law, came up and ordered defendant to
turn Clinton loose; that the deceased then interfered, and
defendant and deceased engaged in a fight; that deceased

knocked defendant through a door into the yard; that defendant came back into the room, and the fight proceeded between defendant on one side and Clinton and the two Whiddens on the other; that several tried to separate them, and did so momentarily, but the fight was almost immediately renewed, Clinton and Eddie Whidden having knives in their hands; that all three of these parties had hold of defendant, and, as they reached a door leading into an adjoining room, the defendant reached and secured a pistol out of the pocket of his coat, which was hanging by the door; that he immediately fired two shots, and that at the time he fired his three antagonists had hold of him, the deceased having him by the throat and the other two cutting at him with knives.

The evidence fails to show that there had been any previous difficulty or ill feeling between the participants in this fight, but it shows without conflict that when John Clinton became boisterous the defendant undertook to act as peacemaker. He was then in his shirt sleeves, and unarmed, and when the deceased interfered the fight began, and I think it is clear from all the evidence that a free-for-all fight then ensued, which continued, with only a momentary interruption, until the fatal shot was fired. I do not think there is any evidence in this record from which malice or deliberation may be inferred, but, giving the evidence the most favorable construction for the state, I am of the opinion that it shows that the killing was done in the heat of passion, and therefore amounted to no more than manslaughter. For this reason I am of the opinion that the judgment of the court below should be reversed, and the cause remanded.

ETHRIDGE, J., concurs in these views.